### Petition of LEDO.

#### No. 47100.

District Court, D. Rhode Island.

Sept. 12, 1946.

Walter V. Moriarty, of Providence, R. I., for petitioner.

Emilien P. Bouchard, Designated Naturalization Examiner, of Providence, R. I.

HARTIGAN, District Judge.

This matter was heard on the request of Manuel Querino Ledo for a review of the recommendation of the naturalization examiner designated to conduct the preliminary hearings upon the petition of Ledo for naturalization that said petition be denied.

It is the contention of the government that the petitioner has not established good moral character as required by law in that the petitioner has made false claims at different times of being a citizen of the United States of America and has given false testimony before the naturalization examiner under oath.

It is conceded that the petitioner, a Portuguese subject, has all the other qualifications for citizenship.

The petition was filed April 10, 1944, under Sec. 310(b) of the Nationality Act of 1940, 54 Stat. 1144, 8 U.S.C.A. § 710(b).

8 U.S.C.A. § 707(a) provides:

"No person, except as hereinafter provided in this chapter, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing petition for naturalization has resided continuously within the United States for at least five years and within the State in which the petitioner resided at the time of filing the petition for at least six months, (2) has resided continuously within the United States from the date of the petition up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

One of the averments made by Ledo in his petition for naturalization is: "(17) I am, and have been during all the periods required by law, attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States."

On April 10, 1944, Ledo testified under oath before an Acting United States Naturalization Examiner as follows:

"Q. Do you wish to go on record that you have never at any time held yourself out or represented yourself to be a U. S. citizen? A. Yes. * * *

"Q. In any of your dealings with the public have you ever represented yourself to be a U. S. citizen? A. No, I have not."

While testifying under oath on August 26, 1944, before another United States Naturalization Examiner, the petitioner further stated that he had been business agent of the Longshoremen's Union Local No. 1329 of Providence for eleven years, which union was affiliated with the International Longshoremen's Association and the American Federation of Labor.

He testified:

"Q. Can you tell me what is required of an officer in your organization as regards to his citizenship? A. Well, he must be an American citizen. That's a rule of the Constitution but if the President sees fit that a man has intentions to become a citizen, I mean the International President, then he can overrule the constitution. * * *

"Q. Now that provision relating to the citizenship of an officer of the organization has been in force since you have been business agent, hasn't it? A. That's right.

"Q. In any of the Constitutions and bylaws of this organization, can you show me any place where the President is given the authority to make exceptions relating to the citizenship of the officers of the organization? A. No, not in the constitutions.

"Q. Mr. Ledo, did you ever claim to be a citizen of the United States in order to hold your position as business agent all these years? A. Not to hold my position, no.

"Q. Did you ever claim to be a citizen of the United States for any reason? A. Well, yes I did down to Quonset. * * *

"Q. Now, in regards to your having claimed American citizenship at Quonset, as you have previously testified. Will you explain more fully? A. Well, when you sign the papers you got to state where you were born and so forth.

"Q. And what did you do? A. I just wrote down 'Born in New Bedford, January 16, 1894.' * * *

"Q. Did you ever claim to having been naturalized at New Bedford, Mass. in 1926? A. Yes, I forgot that, that's right.

"Q. You admit having claimed American citizenship on those two occasions? A. That's right.

"Q. Just when was that? A. Last year, I don't remember the date.

"Q. Will you explain to me the circumstances under which you made those claims? A. I wanted an interview with Mr. ———, the officials of Merritt, Chapman and Scott, they are the contracting stevedores for the Navy.

"Q. Where and to whom did you make those claims of American citizenship? A. This was at Quonset Point, R. I., I just signed blanks.

"Q. What were those blanks? A. For entry into the premises.

"Q. And what was your purpose in claiming American citizenship at that time? A. So I wouldn't have no troubles getting in.

"Q. For this record, will you tell me what is at Quonset Point, R. I.? A. The U. S. Navy Base. * * *

"Q. I show you photostatic copy of pass sheet for the Naval Advance Base Depot at Quonset, R. I. and direct your attention to the fourth name appearing on this sheet. This shows that on January 22, 1943 Manuel Ledo, of the I. L. A. Local 1329 obtained pass No. 65255 and that the application shows this Manuel Ledo was born at Cape Verde Islands Jan. 16, 1894 and was naturalized in the U.S.D.C., New Bed. 1926. Does this pass relate to you? A. Yes.

"Q. Did you make those statements? A. Yes I did.

"Q. And specifically did you make the statement you were naturalized in the District Court of the United States at New Bedford, Mass. in 1926? A. I just put it on the blank.

"Q. Well, that is your allegation, isn't it? A. Yes, I said that. * * *

"Q. I now show you photostatic copy of pass sheet for the Naval Advance Base:

Depot at Quonset, R. I. and direct your attention to the seventh name appearing on this sheet. This shows that on December 29, 1943 Manuel Q. Ledo of the Int. L. S. Provi. R. I. obtained pass No. 9448 and that the application shows this Manuel Q. Ledo born at New Bedford, Mass. Jan. 16, 1894. Does this record relate to you? A. I guess so.

"Q. I'd like a definite answer to that question Mr. Ledo. Does this record relate to you? A. Yes.

"Q. Did you make those statements? A. Yes, I did.

"Q. And specifically did you make the statement you were born at New Bedford, Mass. Jan. 16, 1894? A. Yes, I did. * * *

"Q. And for what reasons did you make those claims of American citizenship? A. Well, the questions is not to have any holdup to interview the official of Merritt, Chapman and Scott. If I was not a citizen I would have more trouble getting in."

Ledo testified in court that at Quonset Point he deliberately represented that he was an American citizen and that he was born in New Bedford, Mass. He admitted that he made such false representations at Quonset Point four or five times for the reason that he was ashamed that he was not a citizen while representing organized labor.

8 U.S.C.A. § 746 provides in part as follows:

"(a)   It is hereby made a felony for any alien or other person, whether an applicant for naturalization or citizenship, or otherwise, and whether an employee of the Government of the United States or not—

"(1)   Knowingly to make a false statement under oath, either orally or in writing, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization or citizenship.

*    *    *    *    *    *

"(18)   Knowingly to falsely represent himself to be a citizen of the United States without having been naturalized or admitted to citizenship, or without otherwise being a citizen of the United States."

Ledo reads, writes and speaks English. For many years he has held office in a labor organization which he knew restricts office holding to American citizens.

Ledo admits he has violated the provisions of 8 U.S.C.A. § 746(a) (18) at a United States Naval Base at a time when the United States was at war. The security of such a base warrants an inquiry as to one's citizenship in applying for a pass, especially in time of war. This is ample reason to deny a pass to an alien under such circumstances.

In United States v. Achtner, 2 Cir., 144 F.2d 49, 52, the court said:

"* * * And the intent of Congress in October, 1940, when § 141 of Title 18 was replaced by § 746 of Title 8, was quite obviously to extend, rather than to reduce, the coverage, as well as the penalties, of the prior law, for the latter statute was part of the Nationality Act of 1940, a national defense measure enacted in the face of the impending war to help tighten controls over the conduct of aliens in this country. See Sen.Rep. No. 2150, Sept. 23, 1940, 76th Cong., 3d Sess., pp. 2-3. Subsections (b) and (c) must, therefore, clearly be read as intended additions and amplifications of the provisions of subsection (a), rather than as narrowing and well-nigh stultifying limitations of it.

*    *    *    *    *    *

"As a matter of fact, the District Court relied upon a concession made by defendant's counsel for the purposes of the motion below—and repeated in his brief here —that defendant had for a long time been in the employ of the Ebasco Services, Inc., a private corporation, and that on October 8, 1941, in answer to a questionnaire of the corporation he stated that he was a citizen of the United States. It would appear that this was a legitimate inquiry on the part of an employer at a time of deepening national crisis, and that hence, whatever may be thought of the severity of the sentence, the conviction itself was not improper."

See Prevost v. United States, 9 Cir., 149 F.2d 747; United States v. Romberg, 2 Cir., 150 F.2d 116.

I find that Ledo, as an applicant for naturalization, on April 10, 1944, made a

920

false statement under oath to a United States Naturalization Examiner.

I find that on January 22, 1943, the petitioner, an alien, did knowingly and falsely represent himself to be a citizen by virtue of naturalization in the United States District Court at New Bedford, Mass., in 1926 and that he made such false representation at a United States Naval Base at Quonset, R. I.

I find that on December 29, 1943, the petitioner did knowingly and falsely represent at a United States Naval Base, Quonset, R. I., that he was born in New Bedford, Mass., January 16, 1894, when in fact he was born in Brava, Cape Verde Islands, on said date.

The petitioner argues in his brief that it does not appear from the testimony to whom the petitioner made the false statements. I find no merit in such an argument because the only fair implication that one can draw from Exhibit 1 is that the "pass sheet for the Naval Advance Base Depot at Quonset, R. I." therein referred to is that such pass sheet is an official United States Navy record.

In United States v. Ginsberg, 243 U.S. 472, 474, 37 S.Ct. 422, 425, 61 L.Ed. 853, the court said:

"An alien who seeks political rights as a member of this nation can rightfully obtain them only upon terms and conditions specified by Congress. Courts are without authority to sanction changes or modifications; their duty is rigidly to enforce the legislative will in respect of a matter so vital to the public welfare."

In United States v. Macintosh, 283 U. S. 605, 51 S.Ct. 570, 572, 616, 75 L.Ed. 1302, the court said:

"In specifically requiring that the court shall be satisfied that the applicant, during his residence in the United States, has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, etc., it is obvious that Congress regarded the *fact* of good character and the *fact* of attachment to the principles of the Constitution as matters of the first importance. The applicant's behavior is significant to the extent that it tends to establish or negative these facts."

The evidence in this case does not satisfy me that Ledo had during the five year period immediately preceding the date of his application "behaved as a man of good moral character, attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the same."

The petition for naturalization is, therefore, denied.